UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FALCON CREST HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:25-cv-00112-MTS |
| | ) |
| CENTURION INVESTMENTS, INC., | ) |
| *d/b/a AVMATS Jet Support*, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Centurion Investments, Inc. ("AVMATS")'s Motion to Dismiss for Forum Non Conveniens. Doc. [18]. Plaintiff Falcon Crest Holdings, LLC ("Falcon Crest") filed a Response in Opposition, Doc. [24], and AVMATS has filed its Reply in Support, Doc. [29]. The Motion is fully briefed and ready for decision. For the reasons that follow, the Court will grant the Motion and dismiss this action without prejudice so that it may be refiled pursuant to the terms of the parties' contracts.

### I.     Background

This case arises out of a jet-airplane sale that never landed. According to the operative Complaint, Facon Crest entered into an Aircraft Purchase and Sale Agreement to sell a jet aircraft to a prospective buyer for $5.7 million. Doc. [15] ¶ 9. That agreement gave Falcon Crest 120 days to complete a pre-purchase inspection and deliver the aircraft "to the Buyer in airworthy condition." *Id.* Thus, "if Falcon Crest failed to perform . . . by the drop-dead date of December 14, 2024, the buyer could refuse to go forward with the agreed sale." *Id.*

To that end, both the buyer and Falcon Crest signed a Pre-Buy Proposal (the "PBP") that authorized AVMATS to undertake the required inspection and estimated a downtime of "15-20 business days" to complete the inspection. Doc. [18-1] at 1. By August 18, 2024, both the buyer and Falcon Crest had executed the PBP, and AVMATS signed on September 11, 2024. *Id.* at 10. AVMATS began its inspection on September 16, 2025. Doc. [15] ¶ 12. On October 11, 2024—exactly twenty business days after the inspection began—AVMATS provided Falcon Crest with the inspection results. *Id.* As Falcon Crest tells it, AVMATS's evaluation report was "a sloppy one-page report with very little detail on the issues identified, pricing, or timing to repair any issues." *Id.*

Moreover, "Falcon Crest could see its [closing deadline for the sale] . . . was 63 days away." *Id.* ¶ 14. In that amount of time, Falcon Crest asserts that it was "impossible to locate another repair company," move the plane to that new company's hangar, and "complete airworthiness repairs" before December 14, 2024. *Id.* ¶ 15. So, on October 21, 2024, "Falcon Crest executed a second writing with AVMATS (the 'Work Authorization') to complete the work identified" in the inspection report. *Id.* ¶ 16. But it took until January 03, 2025, for AVMATS to complete the repairs and return the plane to Falcon Crest—twenty days past the closing deadline—sending the $5.7 million sale into a tailspin. *Id.* ¶ 17. Falcon Crest alleges that AVMATS "prioritized inspections, surveys, repairs, and services" over the specific repairs at issue. *Id.* ¶ 20. Further, AVMATS returned the plane "to Falcon Crest in a damaged condition." *Id.* ¶ 21.

Based on the foregoing, Falcon Crest asserts a breach of contract claim against AVMATS, arising out of both the PBP and the Work Authorization, and a negligence claim alleging that AVMATS "breached its duties of care by failing to reasonably and timely perform

services and repairs." *Id.* at 7–10.  Additionally, Falcon Crest seeks punitive damages as well as attorney's fees under Mo. Rev. Stat. § 431.180. *Id.* at 10–11.  In response, AVMATS moves to dismiss this action pursuant to the forum selection clauses that the parties included in their contracts.  Doc. [18].  The PBP's terms and conditions provide that "[a]ny dispute or issue related to or resulting from this Agreement shall be resolved . . . [by] Binding Arbitration utilizing the rules of the American Arbitration Association."  Doc. [18-1] at 9.  The Work Authorization, in turn, specifies that "[a]ny dispute or claim arising out of or relating to this Agreement or the Work performed hereunder . . . shall be resolved in the Circuit Court of St. Louis County, Missouri."  Doc. [18-2] at 4.  The upshot, according to AVMATS, is that this matter does not belong before this Court under either agreement, so "the case should be dismissed under the doctrine of forum non conveniens in favor of the respective forums" for which the parties bargained.  Doc. [19] at 5.

## II.      Legal Standard

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).  A typical forum non conveniens analysis requires the Court to determine whether the action should be heard in the present forum after careful consideration of both "private interest factors affecting the convenience of the litigants, and . . . public interest factors affecting the convenience of the forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

But where a valid forum selection clause exists in the parties' contract, "[t]he calculus changes." *Atl. Marine*, 571 U.S. at 63.  Practically speaking, the reviewing court no longer

"consider[s] arguments about the parties' private interests"; nor does it accord any weight to "the plaintiff's choice of forum." *Id.* at 63–64.  Instead, "a district court may consider arguments about public-interest factors only." *Id.* at 64.  As a result, "forum-selection clauses should control except in unusual cases." *Id.*  This is because "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (citing *Stewart Org., Inc. v. Ricoh Corp*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)).

Indeed, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *accord M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) ("Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching.").  Because the Supreme Court of Missouri has adopted this federal standard, *see High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 496–97 (Mo. banc 1992) (adopting "the better-reasoned majority rule" announced in *Bremen*), the Court will apply it "while considering state substantive law when called for under that standard."  *See Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (proceeding similarly on appeal where "*Bremen* . . . [had been] adopted by the highest courts of Florida and Arkansas" (citing *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986), *abrogated on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989))).

**III.     Discussion**

Falcon Crest raises two key arguments in opposition to AVMATS's Motion.  First, it asserts that the Court should not consider the arbitration clause in the PBP when making its ruling.  According to Falcon Crest, that earlier-executed arbitration provision was superseded by the forum selection clause in the later-executed Work Authorization agreement.  Doc. [24] at 11; *see also* Doc. [18-2] at 2 (providing that the Work Authorization agreement "supersedes and replaces all prior . . . agreements between the parties relating to the Work").  And, even if the prior arbitration clause might still have effect, Falcon Crest contends that AVMATS has "relinquished or abandoned the right to arbitration" because it has acted inconsistently with that right.  Doc. [24] at 11.  AVMATS does not specifically challenge either of Falcon Crest's arguments regarding the PBP's arbitration clause.  Instead, AVMATS insists that Falcon Crest's arguments are "irrelevant because whether the arbitration provision in the [PBP] is operative, or whether the forum selection clause [in the Work Authorization] . . . is operative, the result is the same . . . [because] *this* Court is not the venue" where the parties agreed to litigate.  Doc. [6].[1]

Accordingly, the Court proceeds to Falcon Crest's second argument: that the Work Authorization's forum selection clause is an unconscionable contract of adhesion, and it would be unfair and unreasonable for the Court to enforce it.  Doc. [24] at 8–12.  The Court does not agree.  Even if the parties' Work Authorization constitutes a contract of adhesion, *see Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 310 F. Supp. 3d 1002, 1020 n.7 (E.D. Mo. 2018) (explaining that an "adhesion contract is a contract created by the stronger of the

---

[1] In addition, neither party disputes that Falcon Crest's claims fall within the scope of the relevant agreements.

- 5 -

contracting parties and offered on a 'take this or nothing' basis" (quoting *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 438 (Mo. banc 2015))), that fact is by no means dispositive. After all, these types of agreements "are used all the time in today's business world . . . [and they are] not inherently sinister and automatically unenforceable." *Hennessey v. Kohl's Corp.*, 571 F. Supp. 3d 1060, 1072 (E.D. Mo. 2021) (applying Missouri law).

Perhaps recognizing this principle, Falcon Crest emphasizes the time pressure that its December 14, 2024, closing deadline created as well as its contention that it was "impossible" to complete the necessary airplane repairs with another company before that date.  Doc. [24] at 6; Doc. [15] ¶ 15; *see also* Doc. [24-1] ¶¶ 13–18.[2]  Even assuming these assertions are accurate, the Court disagrees that they make it "unjust or unreasonable" to enforce the Work Authorization's forum selection clause.  *M.B. Restaurants*, 183 F.3d at 752.  True, Falcon Crest's assertions establish a "clear disparity" in bargaining power between it and AVMATS, but courts will enforce forum selection clauses even under such circumstances.  *See Griggs v. Credit Sols. of Am., Inc.*, 4:09-cv-01776-ERW, 2010 WL 2653474, at *2 (E.D. Mo. June 29, 2010) ("Courts will also enforce forum selection clauses even when presented with a clear disparity in bargaining power or a complete absence of actual negotiations concerning the clause."); *see also Volpe v. Advance Am.*, 4:15-cv-1119-JMB, 2015 WL 5124202, at *4 (E.D. Mo. Sept. 1, 2015) ("[T]he unequal bargaining power of the parties is simply not, in-and-of-itself, a sufficient grounds to find unconscionability.").  Instead, only those contractual provisions that "fail to comport with [the parties'] reasonable expectations and . . . are

---

[2] Courts appropriately consider evidence outside of the pleadings when making a forum non conveniens determination. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 531 (1947) (affirming the district court's forum-non-conveniens dismissal based, in part, on defendant's supporting affidavits).

unexpected and unconscionably unfair are held to be unenforceable." *Cent. Stone Co. v. Warning*, 412 S.W.3d 908, 914 (Mo. Ct. App. 2013) (quoting *Hartland Comput. Leasing Corp. v. Ins. Man, Inc.*, 770 S.W.2d 525, 527 (Mo. Ct. App. 1989)).

Here, Falcon Crest has not shown that the forum selection clause requiring the parties to litigate their disputes in "the Circuit Court of St. Louis County" was either unexpected or unfair under the circumstances.  First, AVMATS and Falcon Crest are sophisticated entities that can both understand the terms of their agreement and appreciate the risks that are inherent in a 120-day, non-negotiable closing deadline as well as the aircraft sale and repair markets, generally.  *See Lackie Drug Store, Inc. v. Express Scripts, Inc.*, 4:23-cv-01669-MAL, 2025 WL 3214306, at *5 (E.D. Mo. Nov. 18, 2025) (finding that, under "the totality of the circumstances," the terms of an arbitration agreement "between two sophisticated business entities" were not unconscionable).  Second, "[t]he clause at issue is plainly stated in the contract, in the same size and type of print as the remainder of the contract," so "[Falcon Crest] cannot persuasively argue that [AVMATS] inserted the clause through some sort of subterfuge." *Griggs*, 2010 WL 2653474, at *2.  And third, the Court sees no indication that the clause at issue was the result of "fraud or overreaching." *Bremen*, 407 U.S. at 15.

Most importantly, the state-court venue that the Work Authorization designates—namely, the county where AVMATS operates and where the contracted-for repair work took place—is fair and reasonable.  *See* Doc. [15] ¶ 2; Doc. [18-2] at 1; Doc. [24] at 6 (explaining that the plane was located in AVMATS's hangar); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (finding no "fundamental unfairness" where a form contract's forum selection clause required the parties to litigate where the petitioner "ha[d] its principal place of business" and where contract performance routinely occurred); *cf. State ex rel. U. S.*

- 7 -

*Fid. & Guar. Co. v. Mehan*, 581 S.W.2d 837, 840 (Mo. Ct. App. 1979) (upholding a statutory venue provision in part because it is "reasonable and logical that the forum provided be at the situs of the project where all parties by their voluntary actions have come to do business"). And, contrary to Falcon Crest's assertions, Doc. [24-1] ¶ 22, all indications are that the parties' forum selection clause *did* comport with their reasonable expectations.  As explained above, the Work Authorization's forum selection clause is clearly stated and comprehensible, especially to sophisticated parties such as these.  In addition, the arbitration clause in the parties' PBP shows, at the very least, that Falcon Crest and AVMATS have been willing to contractually limit their choices of venue—even foregoing a federal forum—as part of their course of dealing.  Doc. [18-1] at 9.  This is hardly surprising because these types of provisions generally favor all parties to a contract.  *See Carnival*, 499 U.S. at 593–94 (acknowledging the "salutary effect" of forum selection clauses and the cost savings that they create).

In sum, the Court concludes that Falcon Crest has failed to carry its "heavy burden" to demonstrate that the Work Authorization's forum selection clause is unenforceable.  *See Gathering Tree v. Mudbots, LLC*, 6:24-cv-03050-MDH, 2025 WL 726730, at *2 (W.D. Mo. Mar. 6, 2025); *accord Sabatino v. LaSalle Bank, N.A.*, 96 S.W.3d 113, 116 (Mo. Ct. App. 2003) ("The party resisting enforcement of a forum selection clause bears a heavy burden in persuading the court that the clause is unfair or unreasonable.").[3]  Upon consideration of the

---

[3] Falcon Crest's argument that the Court's diversity jurisdiction establishes a "federally recognized public policy interest" against the enforcement of state-court-directed forum selection clauses, *see* Doc. [24] at 10–11, is unavailing, *see RK Dixon Co. v. Dealer Mktg. Servs., Inc.*, 284 F. Supp. 2d 1204, 1209 (S.D. Iowa 2003) ("[T]he diversity jurisdiction of the federal courts does not demand denial of enforcement of a forum selection clause."); *Spatz v. Nascone*, 368 F. Supp. 352, 356 (W.D. Pa. 1973) ("We do not find in any of the discussions relating to diversity jurisdiction of the United States Courts . . . [that the parties' choice of forum] should not be enforced because of the diversity jurisdiction of the Federal Courts.").  Further, to adopt Falcon Crest's reasoning would contravene the Supreme Court's instruction that "forum selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

totality of the circumstances, including "the nature of the contract and the reasonableness of the forum selection clause," the Court concludes the Work Authorization's forum selection clause "is enforceable."  *H&R Block Tax Servs. LLC v. Money Tr. Fin. Servs., LLC*, 4:24-cv-00155-BP, 2024 WL 5453823, at *3 (W.D. Mo. May 20, 2024).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Centurion Investments, Inc.'s Motion to Dismiss for Forum Non Conveniens,  Doc. [18], is **GRANTED**.  The Court will enter an Order of Dismissal without Prejudice herewith.

Dated this 8th day of January 2026.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE